IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM D. DUNNE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> D. SMITH, WARDEN, ) <br> B. AVALOS, ASSOCIATE ) <br> WARDEN, and ) <br> J. KARGE, CAPTAIN, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. 1:07-00074-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Chief United States District Judge Anthony W. Ishii has reassigned this *Bivens*[1] action brought by a federal prisoner to the undersigned visiting judge. Currently pending is Defendants' Motion to Dismiss and/or For Judgment on the Pleadings.  (Docket No. 16.)

After reviewing the parties' briefing, the Court has determined that this matter will be decided on the basis of the written record without oral argument. For the reasons set forth below, the Court concludes that Plaintiff cannot proceed against

---

[1] *Bivens v. Six Unknown Agents of Fed. Bur. of Narc.*, 403 U.S. 388 (1971).

**MEMORANDUM DECISION AND ORDER - 1**

Defendants in their official capacities for injunctive and declaratory relief. The Court finds that Plaintiff has stated a claim for damages against the Defendants in their individual capacities under the First and Fifth Amendments. The Defendants' request for dismissal on qualified immunity grounds will be denied without prejudice, but they may reassert the defense in a motion for summary judgment.

## BACKGROUND

Plaintiff William Dunne is a federal prisoner who was incarcerated at the United States Penitentiary at Atwater, California (USP Atwater) from March 22, 2002 until he was transferred to another prison on August 11, 2006.

From January 19, 2006, until January 26, 2006, and again from April 3 to August 11 of that year, Dunne was in the Special Housing Unit (SHU) at USP Atwater. The SHU contains a mix of inmates taken out of the general prison population either on "administrative detention" status or, for punitive reasons, in "disciplinary segregation." Dunne was an administrative detention inmate.

Dunne alleges that during the four months that he was held in the SHU he was not given any of the newspapers or magazines to which he had previously subscribed. He contends that despite his repeated requests for access to reading material, he was permitted to go only once to a small room that served as a makeshift law library, and no newspapers or magazines were available. Based on

these allegations, Dunne has sued Warden Smith, Associate Warden Avalos, and Captial J. Karge for violations of his First, Fifth, and Eighth Amendment rights. He alleges that Smith ordered the ban on newspapers and magazines in the SHU, Avalos wrote the memorandum promulgating that policy, and Karge implemented the policy.

The Defendants have responded by filing the pending Motion to Dismiss and/or For Judgment on the Pleadings. They request dismissal based on the lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and on the ground of qualified immunity. Dunne has responded to the Motion, and the matter is now ripe for the Court's decision.

## LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a motion to dismiss for lack of subject matter jurisdiction. The court must presume a lack of jurisdiction unless the contrary affirmatively appears, *see Stock West, Inc., v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989), and the defense of lack of subject matter jurisdiction may be raised at any time by the parties or the court. FED. R. CIV. P. 12(h)(3).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the court must accept as true all allegations

of material fact, and it shall construe those facts in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). The court may not consider any material beyond the pleadings, but may review material that is properly submitted as part of the complaint without converting the motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). The test to be applied is not whether recovery is unlikely or remote, but rather whether the plaintiff should be permitted to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

A motion for judgment on the pleadings under Rule 12(c) "shall be granted when it appears that moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003).

## DISCUSSION

1.  **Dunne cannot proceed against the Defendants in their official capacities for injunctive and declaratory relief.**

Dunne is suing the Defendants in their official capacities for injunctive and declaratory relief, and he is suing them in their individual capacities for monetary damages. The injunctive relief that he seeks is an order requiring Defendants "and their successors" to allow prisoners in the SHU at USP Atwater to receive and possess "a reasonable amount of newspapers and magazines." (Docket No.1, pp. 3-4.) In their Motion, Defendants first contend that the Court lacks subject matter jurisdiction for claims against them in their official capacities, and they argue that the request for injunctive and declaratory relief is moot because Dunne has been transferred to another prison. The Court agrees on both points.

In *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), the United States Supreme Court recognized a cause of action for damages against federal officers for constitutional violations against an individual, but no *Bivens*-like cause of action is available against officers sued in their official capacities. *FDIC v. Meyer,* 510 U.S. 471, 485-86 (1994); *Nurse v. United States*, 226 F.3d 996, 1004 (9th Cir. 2000). This is so "because a *Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity," absent a waiver to immunity. *Nurse*, 226 F.3d at 1004. Accordingly, Dunne's official capacity claims are not cognizable under a *Bivens* theory.

**MEMORANDUM DECISION AND ORDER - 5**

In addition, to be justiciable, the plaintiff's claim must not have become moot. *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008). As pertinent here, an inmate's transfer or release will generally moot any claims for injunctive relief because the inmate is no longer subject to the prison's allegedly unconstitutional policy. *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991).

Dunne acknowledges this standard but argues that his case presents an exception to the mootness doctrine because his claim is "capable of repetition, yet evading review." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). To qualify for this exception, Dunne must show that (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and (2) there is a demonstrated probability that he will be subjected to the specific action at issue again. *Spencer*, 523 U.S. at 17 (citations omitted); *Dilley v. Gunn*, 64 F.3d 1365, 68-69 (9th Cir. 1995).

There is no indication that the challenged action--the prohibition of magazines and newspapers in SHU cells at USP Atwater--is "too short in duration to be fully litigated prior to its cessation or expiration." Further, Dunne's assertion that he

could be transferred back to USP Atwater is speculative and does not demonstrate a

probability the he will be returned to that facility and housed in the SHU under the

same conditions. *See*, *e.g.*, *Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985)

("[t]he possibility that [plaintiff] will be convicted and again sent to the maximum

security unit at Soledad is too speculative to rise to the level of reasonable

expectation or demonstrated probability"); *see also Smith v. Hundley*, 190 F.3d 852,

853 (8th Cir. 1999) (finding plaintiff's "theory of retransfer to ISP to be too

speculative a basis for declaratory relief").

Accordingly, Dunne's claims shall be dismissed to the extent that he has sued

Defendants Smith, Avalos, and Karge in their official capacities seeking injunctive

and declaratory relief. Conversely, his *Bivens* action is cognizable to the extent that

he sues the Defendants in their individual capacities for monetary damages for a

past constitutional injury. The Court now turns to the constitutional claims that have

been alleged.

### 2. Dunne has stated a claim upon which relief may be granted.

Dunne claims that the Defendants' implementation of the policy banning all

newspapers and magazines while he was housed in the SHU violated his rights

under the First, Fifth, and Eighth Amendments. Defendants seek dismissal based on

the failure to state a claim upon which relief may be granted; alternatively, they seek

judgment on the pleadings.

For the reasons that follow, the Court concludes that Dunne has stated a claim under the First and Fifth Amendments but not the Eighth Amendment.

## First Amendment

A prisoner retains "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). In *Turner v. Safely,* 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 89.

The *Turner* Court identified four factors to consider when determining whether a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. *Id*. at 89-90.

In the present case, Dunne has alleged sufficient facts showing that the ban on the possession of magazines and newspapers in the SHU does not bear a reasonable

relationship to legitimate penological interests. Though he concedes that prison officials informed him that policy was intended to promote "security, sanitation, and safety," he alleges that they offered no specifics beyond these conclusory statements.

The Defendants counter that "[p]rison safety and security are widely recognized as legitimate penological interests." (Docket No. 16-1, p. 8.) The Court has no quarrel with that general statement, but no evidence is presently before the Court that reasonably *ties* the decision to ban all newspapers and magazines to these asserted interests. Put another way, a rational connection between the policy and the penological interests at stake is missing. The most detailed explanation appears to have been given by a Bureau of Prisons official during Dunne's administrative appeal:

> Possession [of newspapers and magazines] is prohibited as it presents a threat to security of the housing unit and a health, fire, and housekeeping hazard.
>
> ***
>
> [i]t has been determined that newspapers and magazines pose a security threat in the SHU based upon prior incidents involving excess newspapers and magazines.

(Complaint, Exhibit 2-6.)

This explanation, however, does not distinguish between the supposed

**MEMORANDUM DECISION AND ORDER - 9**

"health, fire, and housekeeping" hazard of keeping newspapers and magazines in the prisoners' cells and the danger posed by other flammable materials that were permitted, including religious books, 10 letters, photographs, approximately 20 sheets of paper, legal material, and toilet paper. (Complaint, Exhibit 4.) No effort was apparently made to differentiate between inmates who were housed in the SHU for disciplinary reasons and those, like Dunne, who were kept there on administrative detention. While the standards for reviewing free speech restrictions on prisoners are deferential, they are not "toothless." *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989). "*Turner* requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective." *Beard v. Banks*, 548 U.S. 521, 535 (2006).

Courts have found similar vague and overbroad explanations to be insufficient to establish the necessary connection under *Turner*. *See*, *e.g.*, *Prison Legal News v. Lehman*, 397 F.3d 692, 700 (9th Cir. 2005) (noting that "it is irrational to prohibit prisoners from receiving bulk rate mail and catalogs on the theory that it reduces fire hazards because the DOC already regulates the quantity of possessions that prisoners may have in their cells"); *Morrison v. Hall*, 261 F.3d 896, 905 (9th Cir. 2001) (similar); *see also Spellman v. Hopper*, 95 F.Supp.2d 1267, 1287 (M.D. Ala. 1999) (rejecting, among other things, preventing fire as a reasonable interest in light

of the limit on material kept in cells); *cf. Mann v. Smith*, 796 F.2d 79, 81 (5th Cir. 1986) (finding, in a pre-*Turner* case, a complete ban on periodicals to be an exaggerated response to a purported fire and sanitation danger).

It may be the case that the Defendants will yet come forward with evidence that puts flesh on the bones of the "security, sanitation, and safety" rationale, but given the limited review at this stage in the proceeding, Dunne has sufficiently alleged the absence of a valid, rational connection between the policy and the legitimate penological interests put forward to justify it.

He has also alleged facts going to the second *Turner* factor--whether there are alternative means of exercising the right. Although the policy ostensibly allowed SHU inmates to access reading material in a "law library," he asserts that the library in the SHU was in fact an empty holding cell or utility room with "obsolete cast-offs from the institution law library." (Complaint, Attached Affidavit, ¶ 38.) He was permitted access to this resource only once, despite repeated requests, and on that one occasion he did not see any newspapers or magazines. (Aff. ¶ 39.) While inmates in the SHU are allowed to have a small radio in their cells, Dunne was without one, and, in any event, he contends that the poor reception at the prison would not provide a substitute for the content that could be received through written sources.

**MEMORANDUM DECISION AND ORDER - 11**

With respect to the third and fourth *Turner* factors, Dunne contends that because correctional officers were required to handle publications that come into the prison regardless whether they were delivered to the inmates, accommodating an inmate's right to receive outside publications would have had little impact on prison staff or the allocation of resources. He also posits reasonable alternatives to a blanket prohibition that would not increase the burden on prison staff significantly, such as limiting the amount of reading material in each cell.

In pressing for dismissal, Defendants rely on *Beard v. Banks*, 548 U.S. 521 (2006). That reliance is misplaced. In *Beard*, the Supreme Court upheld a prison regulation banning all newspapers, magazines, and personal photographs in a long-term restrictive housing unit based on the warden's claim that the ban was intended to motivate better behavior among a subset of the most recalcitrant, incorrigible inmates in the entire institution. *Id*. at 525. The Supreme Court determined that the policy was reasonably related to the legitimate penological interest of modifying the behavior of these difficult inmates. *Id*. at 526.

Unlike *Beard*, there is no evidence before this Court tending to show that behavior modification was one of the purposes behind the newspaper and magazine ban in the SHU at USP Atwater. To the contrary, as alleged in the Complaint, the restriction on reading material applied to all inmates in the SHU regardless of their

**MEMORANDUM DECISION AND ORDER - 12**

circumstances. Indeed, Dunne asserts that he was not in segregated housing for punitive reasons or because he was a discipline problem.

In *Beard*, moreover, the Supreme Court never reached the warden's additional claims, similar to those put forward here, that the restriction was supported by "the need to minimize the amount of property they control in their cells, and the need to assure prison safety, by, for example, diminishing the amount of material a prisoner might use to start a cell fire." *Id*. at 530. Therefore, while *Beard* may provide a pertinent example, it does not control the outcome.

Accepting the allegations in the Complaint as true, the Court concludes that Dunne has stated a claim for relief under the First Amendment.

## Fifth Amendment

Dunne next contends that the implementation of the policy deprived him of due process and equal protection of the law.[2] He may proceed with a Fifth Amendment claim on substantive due process and equal protection theories, but that claim will be effectively subsumed by the First Amendment claim because it is also governed by the test announced in *Turner*.

The *Turner* analysis "applies to all circumstances in which the needs of

---

[2] The Fifth Amendment's Due Process Clause contains in implied guarantee against the denial of equal protection of the laws by the federal government. *Bolling v. Sharpe*, 347 U.S. 497 (1954).

**MEMORANDUM DECISION AND ORDER - 13**

prison administration implicate constitutional rights." *Washington v. Harper*, 494

U.S. 210, 224(1990). Therefore, to the extent that Dunne alleges that the

confiscation of his magazines and newspapers arbitrarily deprived him of a

fundamental liberty interest, what appears to be a "substantive due process" theory,

that claim must viewed though the *Turner* lens. This is likewise true with the equal

protection claim; the Supreme Court has applied strict scrutiny only to prison

regulations involving suspect classifications such as race. *See, e.g., Johnson v.*

*California*, 543 U.S. 499, 505 (2005). Prison regulations that implicate First

Amendment rights do not trigger strict scrutiny and are instead reviewed under a

rational basis or reasonable relationship test. *See*, *e.g.*, *Williams v. Lane*, 851 F.2d

867, 881 (7th Cir. 1988).

Dunne also asserts that he was deprived of some type of undefined process

before his subscriptions were confiscated. This aspect of his claim is vague, but it

seems to rest on a procedural due process theory.

The Supreme Court has held that "withhold[ing] delivery of [inmate mail]

must be accompanied by minimum procedural safeguards." *Procunier v. Martinez*,

416 U.S. 396, 417-18 (1974), overruled on other grounds by *Thornburgh v. Abbott*,

490 U.S. 401, 413-14 (1989). Specifically, an inmate has a "due process liberty

interest in receiving notice that his incoming mail is being withheld by prison

authorities." *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir.1999). It is "not the prison's rejection of the publication that makes out a procedural due process claim; it is the lack of notice of that rejection." *Sorrels v. McKee,* 290 F.3d 965, 972 (9th Cir. 2002). "Only if the failure to provide notice was pursuant to prison policy does this constitute a due process violation," but mere negligence on the part of prison officials is not actionable as a due process claim. *Id.* at 972 (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984).

According to Warden Smith's response to Dunne's administrative appeal, which is an exhibit attached to the Complaint, the policy at issue required that "[n]ewspapers and magazines that are delivered to the institution for the inmate will be placed in the SHU Lieutenant's Office. The printed materials will be inventoried by SHU staff and presented to the inmate for signature." (Complaint, Exhibit 2-3.) Dunne contends that he received "received confiscation notices for five of the newspapers and two magazines, and not notice of any kind regarding the rest of the confiscated material." (Aff. ¶ 5.) He has alleged no facts from which one could conclude that the failure to notify him of subsequent confiscations was anything other than negligence, which does not state a procedural due process claim.

<u>Eighth Amendment</u>

Dunne next alleges that his incarceration in the SHU without access to

**MEMORANDUM DECISION AND ORDER - 15**

newspapers and magazines amounted to cruel and unusual punishment under the Eighth Amendment. The Court agrees with Defendants that these allegations fail to state a claim for relief.

The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of" a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The discrete basic human needs that prison officials must satisfy include food, clothing, shelter, sanitation, medical care, and personal safety. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). To state a cruel and unusual punishment claim based on conditions of confinement, then, the prisoner must allege both a "sufficiently serious" deprivation of one of life's necessities and that prison officials acted "with a sufficiently culpable state of mind." *Wilson*, 510 U.S. at 298.

According to this authority, it is clear the inability to read periodicals for four months in a segregated housing unit, without more, may state a First Amendment claim but does not allege the type of extreme deprivation that would implicate the Eighth Amendment. *See Hudson v. MacMillan*, 503 U.S. 1, 9 (1992) (noting that

**MEMORANDUM DECISION AND ORDER - 16**

the prisoner must show more than "routine discomfort" of prison life); *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 n.8 (7th Cir. 1996)("[t]he denial of reading material does not state a claim under the Eighth Amendment, since it is not a deprivation of 'basic human needs' or 'life's necessities'). Accordingly, Dunne's Eighth Amendment claim will be dismissed.

### 3. The Defendants' Motion to Dismiss on the grounds of qualified immunity shall be denied without prejudice.

Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling on a qualified immunity defense, a court must consider two questions. First,[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if the plaintiff has alleged a deprivation of a constitutional right, a court "is to ask whether the right was clearly established." *Id*. The dispositive inquiry is whether, in the specific context of the case, "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Taking the facts as they have been pled in the Complaint, Dunne has stated a

claim that prison officials violated his First Amendment right when they confiscated incoming publications in the absence of reasonable relationship to a legitimate penological interest. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) (recognizing a qualified First Amendment right in prison). That right was also clearly established when the policy was enforced against Dunne. For instance, by January 2006, it was clear in the Ninth Circuit that prison officials could not prohibit the receipt of gift publications when sent directly from a publisher based on vague concerns about contraband and other safety hazards. *Croften v. Roe*, 170 F.3d 959, 961 (9th Cir. 1999). Prison officials also could not prohibit the receipt of subscription publications sent by bulk rate or third or fourth class, insisting instead on first or second class postage. *Morrison v. Hall*, 261 F.3d 896, 905 (9th Cir. 2001). Other courts have also held that blanket prohibitions on the receipt of periodicals were unconstitutional. *See Spellman v. Hopper*, 95 F.Supp.2d 1267, 1287 (M.D. Ala. 1999) ("permanent, across-the-board, and (in some cases) lifetime prohibition of all subscription publications in administrative segregation offends the Constitution"); *Parnell v. Waldrep*, 511 F.Supp. 764, 767-68 (W.D. N.C.1981) ("[t]he prohibition of virtually all reading material deprives the inmates of their First Amendment right to receive information and ideas"); *Hutchings v. Corum*, 501 F.Supp. 1276, 1299 (W.D. Mo. 1980)(same).

**MEMORANDUM DECISION AND ORDER - 18**

In support of their qualified immunity defense, Defendants again place too much emphasis on *Beard*. First, the policy in this case came into effect no later than January of 2006, and *Beard* was not issued until June 28, 2006. It would be difficult to claim that the Defendants were relying on *Beard* when the Supreme Court's opinion had not yet been released. But more to the point, Defendants overstate *Beard*'s sweep; the Supreme Court did not hold that prison officials may ban newspapers and magazines in all segregated housing units, regardless of the reasons for inmate placement, based solely on unexplained concerns of security and safety.

The Court notes that this issue arises in the posture of a Rule 12(b)(6) motion, and the facts are limited to those set out in the Complaint. *See Hydrick v. Hunter*, 500 F.3d 978, 984 (9th Cir. 2007) (noting the special difficulty of deciding the qualified immunity defense on a 12(b)(6) motion. Defendants may still be able to show that they are entitled to qualified immunity at the summary judgment stage on evidence not yet presented, but the Court finds that they are not immune based solely on the facts as alleged in the Complaint. As a result, the Defendants' request for dismissal on the grounds of qualified immunity is denied without prejudice.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion to

**MEMORANDUM DECISION AND ORDER - 19**

Dismiss and/or for Judgment on the Pleadings (Docket No. 16) is GRANTED in part and DENIED in part. Plaintiff's claims against the Defendants in their official capacities for injunctive and declaratory relief are dismissed. Plaintiff's claim under the Eighth Amendment is dismissed for failure to state a claim upon which relief may be granted. The Motion is denied insofar as Plaintiff has stated a claim against the Defendants in their individual capacities for monetary damages under the First Amendment and the Fifth Amendment (but as limited herein). The Motion is denied without prejudice on the grounds of qualified immunity.

IT IS FURTHER ORDERED that the parties shall adhere to the following schedule:

1. **Answer**: Defendants shall file an answer to the Complaint no later than 20 days from the date that this Order is entered.

2. **Disclosure of Relevant Documents:** On or before **May 18, 2009,** the parties shall provide each other with a copy of relevant documents in their possession.

3. **Amendment of the Pleadings and Joinder of Parties:** The deadline to amend the pleadings and to join parties is **June 26, 2009.** Although this deadline precedes the general discovery deadline, the parties are directed to send out all discovery requests that might relate to

**MEMORANDUM DECISION AND ORDER - 20**

amendment or joinder enough in advance of this amendment and
joinder deadline to obtain the responses needed to make an informed
decision on amendment and joinder.

4.    **Completion of Discovery**:  All discovery shall be completed on or
before **August 21, 2009.**  Discovery requests must be made far enough
in advance to allow *completion* of the discovery in accordance with the
applicable federal rules *prior* to this discovery cut-off date.  The Court
is not involved in discovery unless the parties are unable to work out
their differences as to the discovery themselves.

5.    **Depositions**:   Depositions, if any, shall be completed on or before
**August 21, 2009.**  If Defendants wish to take the deposition of Plaintiff
or other witnesses who are incarcerated, leave to do so is hereby
granted.  Any such depositions shall be preceded by ten (10) days'
written notice to all parties and deponents.  The parties and counsel
shall be professional and courteous to one another during the
depositions.  The court reporter, who is not a representative of
Defendants, will be present to record all of the words spoken by
Plaintiff (or other deponent), counsel, and any other persons at the
deposition.  If Plaintiff (or another deponent) wishes to ensure that the

court reporter did not make mistakes in transcribing the deposition into a written form, then he can request the opportunity to read and sign the deposition, noting any discrepancies between what is transcribed and what he believes he said. If Plaintiff wishes to take depositions, he must file a motion requesting permission to do so, specifically showing his ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and the recording, and the source of funds for payment of the cost.

6. **Dispositive Motions:** All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs on or before **September 25, 2009.** Responsive briefs to such motions shall be filed within twenty-one (21) days after service of motions. Reply briefs, if any, shall be filed within ten (10) days after service of responses. **Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court. No motion or memorandum, typed or handwritten, shall exceed 20 pages in length.**



DATED: **March 27, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge