UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM D. DUNNE,<br><br>    Petitioner,<br><br>v.<br><br>D. SMITH, WARDEN, B. AVALOS, ASSOCIATE WARDEN, and J. KARGE, CAPTAIN,<br><br>    Defendants. | Case No. 1:07-00074-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending in this *Bivens* action is Defendants' Supplemental Motion for Summary Judgment. (Dkts. 44, 45.) The parties have adequately stated the facts and the law in their briefing, and the Court will resolve these matters on the parties' briefing and the written record without oral argument. For the reasons that follow, Defendants' Motion will be granted, and this case will be dismissed.

## BACKGROUND

Plaintiff William Dunne is a federal prisoner who was incarcerated at the United States Penitentiary at Atwater, California (USP Atwater) from March 22, 2002, until he

**MEMORANDUM DECISION AND ORDER - 1**

was transferred to another prison on August 11, 2006. (Dkt. 1, *Complaint*, pp. 3-4, 22.) Dunne was in the Special Housing Unit (the SHU) at USP Atwater from January 19, 2006, until January 26, 2006, and again from April 3 to August 11 of that year. (Dkt. 1, pp. 6-7, 22-23.) Dunne claims he was placed in the SHU for administrative rather than punitive reasons. (Dkt. 1, p. 22.)

Before Dunne was transferred to the SHU, prison officials had promulgated a policy that banned all newspapers and magazines from SHU cells. (Dkt. 1, pp. 7-8.) This policy was implemented to address fire, sanitation, and safety concerns. (Dkt. 1, Ex. 2-3.) Although inmates were forbidden from possessing newspapers and magazines in their cells, they could request access to a small room that functioned as a law library, where they had access to assorted reading material that was to be rotated periodically by the Education Department at the prison. (Dkt. 30-4.)

On January 16, 2007, Plaintiff filed a Complaint in the United States District Court for the Eastern District of California, alleging that he was not given any of the newspapers or magazines to which he had previously subscribed during the approximately four months that he was held in the SHU. (Dkt. 1, pp. 22-23.) In his Complaint, he further contended that despite his "repeated requests," he was permitted to go only once to the makeshift law library, and no newspapers or magazines were available to him.[1] (Dkt. 1, pp. 25-26.)

---

[1] Dunne has since admitted that he was permitted to go to the law library twice. (Dkt. 52, p. 4.)

**MEMORANDUM DECISION AND ORDER - 2**

Based on these allegations, Dunne has named, as Defendants, the Warden of USP Atwater at the time, Dennis Smith; the Associate Warden, Belinda Avalos; and the Chief of Security, Captain J. Karge. (Dkt. 1.) Dunne claims that these Defendants violated his First, Fifth, and Eighth Amendment rights by creating and implementing the ban on possession of newspapers and magazines in the SHU. In particular, he asserts that Warden Smith ordered the policy, Avalos wrote the memorandum promulgating that policy, and Karge implemented it.

After the case was reassigned to the undersigned District Judge, the Court issued a Memorandum Decision and Order granting in part and denying in part Defendants' Motion to Dismiss. (Dkt. 27, *March 23, 2009 Memorandum Decision and Order*.) In relevant part, the Court dismissed Dunne's claims against Defendants in their official capacities for injunctive and declaratory relief, as well as his claim of cruel and unusual punishment under the Eighth Amendment. (Dkt. 27, pp. 4-6.) But the Court concluded that the Complaint would not be dismissed in its entirety because Dunne had stated a claim for relief against Defendants in their individual capacities for monetary damages under the First and Fifth Amendments. (Dkt. 27, p. 20.) At that early stage in the case, the Court found that Defendants had not yet come forward with evidence showing a reasonable relationship between the in-cell ban on newspapers and magazines and the asserted interests in security, sanitation, and safety. (Dkt. 27, p. 11.)

Later, Defendants put flesh on the bones of their asserted rationale for the policy. In support of their Motion for Summary Judgment, the presented evidence that inmates in

**MEMORANDUM DECISION AND ORDER - 3**

the SHU had used newspapers and magazines in the recent past to set fires, make weapons and body armor, cover windows, and cause sanitation issues. (Dkt. 30-3, 30-4.) Based on this evidence, the Court upheld the ban on newspapers and magazines in SHU cells as having a rational relationship to legitimate penological interests. (Dkt. 35, *March 31, 2010 Memorandum Decision and Order*, pp. 8-14.) The Court also determined that the prison's policy allowed for an alternative means for inmates to exercise their First Amendment rights by requesting access to reading material in the law library. (Dkt. 35, pp. 14-16.) The Court ultimately denied the Motion, however, after finding that there was a disputed issue of material fact as to whether Dunne had actually received the alternative access contemplated by the policy during the time that he was in the SHU. (Dkt. 35, p. 18.)

The Court thereafter referred the case to a telephonic medication conference with Magistrate Judge Larry M. Boyle. (Dkt. 35, p. 23.) The parties did not settle the case, but the parties agreed to reopen the deadlines for filing another round of dispositive motions and/or motions to amend the pleadings. (Dkt. 40.) The Court granted that request and set a new deadline for the filing of motions. (Dkt. 41.)

Defendants have now submitted a Supplemental Motion for Summary Judgment, to which Dunne has responded, and the Court is prepared to rule on these matters.[2]

### STANDARD OF LAW

---

[2] Dunne's Motion for Extension of Time will be granted, and his response, which was filed in parts, is deemed timely. (Dkt. 51.)

**MEMORANDUM DECISION AND ORDER - 4**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(1)(a). Summary judgment is the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. See id. at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(1)(c)(3).

Material used to support or dispute a fact must be "presented in a form that would

**MEMORANDUM DECISION AND ORDER - 5**

be admissible in evidence." Fed. R. Civ. P. 56(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, 477 U.S. at 252.

## DISCUSSION

Defendants claim that they are entitled to summary judgment on the following grounds: (1) Dunne failed to exhaust his administrative remedies properly before filing his Complaint; (2) there is no evidence in the record that Dunne "repeatedly" requested access to reading material in the SHU law library and, in any event, the named Defendants were not personally involved in any individual failures to effect the policy correctly; and (3) Defendants have qualified immunity from liability for damages.

**MEMORANDUM DECISION AND ORDER - 6**

The Court finds that Dunne exhausted his administrative remedies, but it agrees with Defendants that they are entitled to summary judgment because there is insufficient evidence in the record on which a jury could decide in Dunne's favor on his claims. Alternatively, Defendants are entitled to summary judgment because they have qualified immunity.

### 1. Plaintiff Exhausted His Administrative Remedies

#### (a) Legal Standards

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Id. at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

**MEMORANDUM DECISION AND ORDER - 7**

A claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should ordinarily be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2002). Defendants have the burden to plead and prove a lack of exhaustion. *Id*.

### (b) Discussion

Initially, the Court finds that Defendants did not waive the exhaustion defense. While they did not raise it in a pre-answer motion to dismiss or in their answer, an affirmative defense may still be raised after an answer has been filed as long as the plaintiff suffers no prejudice. *Rivera v. Anaya*, 726 F.2d 564, 566 (9yh Cir. 1984); *Magnana v. Comm. of the Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997). Dunne has not argued how he would be prejudiced by consideration of this issue, and the Court finds that he would not be.

The Court nevertheless concludes that Defendants have not carried their burden to prove that Dunne failed to exhaust his administrative remedies properly. Defendants argue that although Dunne completed BOP's administrative review process with respect to the broader policy, he did not complain more specifically at the initial level of review about the fact that he had been deprived of access to the law library. According to Defendants, Dunne was required to include this level of detail at each step in the review process to have properly exhausted his remedies.

In the Court's view, Defendants are relying on an overly cramped interpretation of

**MEMORANDUM DECISION AND ORDER - 8**

Dunne's complaint to prison officials. He used the first level of review to request, in pertinent part, that "the policy [banning newspapers and magazines] be rescinded and that he be compensated for his loss." (Dkt. 45-5, Smith Declaration, ¶ 7.) In support, he asserted that he had been deprived of newspapers and magazines while he was in the SHU. The Court finds that this grievance reasonably notified officials about the essential problem – that is, that Dunne wanted access to newspapers and magazines in the SHU that he was not currently receiving – such that officials had "an opportunity to resolve [the dispute] concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. at 204. Defendants also admit that Dunne raised more specific issues related to the lack of access to the law library in his higher level appeal to the BOP Central Office, and reviewing officials did not rely on Defendants' current procedural argument to dismiss that appeal. (Dkt. 44-1, p. 8.)

Accordingly, while the Court finds the exhaustion defense to be timely, it will not dismiss the Complaint based on a failure to exhaust administrative remedies. The Court now turns to Defendants' arguments on the merits.

**2. Defendants are Entitled to Summary Judgment**

A prisoner retains "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). In *Turner v. Safely,* 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate

**MEMORANDUM DECISION AND ORDER - 9**

penological interests." *Id*. at 89.

The *Turner* Court identified four factors to consider when determining whether a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. *Id*. at 89-90.

Applying the *Turner* test, this Court previously determined that the SHU policy was rationally related to legitimate penological interests based on ongoing security, safety, and sanitation problems in the SHU. (Dkt. 35, p. 13.) The Court reaffirms that view here, and it is not convinced by Dunne's attempt to create factual disputes based on his perception of the problem in the SHU. Prison administrators undoubtedly had a broader view of that situation, and the Court owes deference to their security decisions regarding the day-to-day operation of the prison. *See Turner*, 539 U.S. at 132. To the extent that Dunne disagrees about the scope of the problem, or to the extent that he disagrees about whether prison administrators' decision to enact the newspaper and magazine ban was a measured response, he is disputing the administrators' professional judgment, which will not create an issue for trial. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) (distinguishing between "disputed facts and disputed matters of professional judgment").

**MEMORANDUM DECISION AND ORDER - 10**

In that same Memorandum Decision, the Court also concluded that the prison's policy, on its face, provided sufficient alternatives for inmates to access reading material in the SHU law library and to obtain resources from the Education Department. (Dkt. 35, pp. 14-23.) The Court did not grant summary judgment to Defendants at the time, however, because it found disputed facts on the narrow issue of whether Dunne's *own* access to the alternative venue for viewing reading material was sufficient to comport with his constitutional rights. (Dkt. 35, p. 18.)

In their second Motion for Summary Judgment, Defendants claim that Dunne would have had access to such material from the Education Department in the SHU law library, including some newspapers and magazines, had he requested it, and, moreover, that there is no evidence in the record to prove that he properly requested access to the law library on numerous occasions. (Dkt. 44-1, p. 9.) In support, they have provided a declaration from the Supervisor of Education at USP Atwater, Michael Chavez. (Dkt. 44-5.) Chavez asserts that any of the material available through the Education Department, with a few minor exceptions, could be obtained in the SHU library upon a written request. (*Id*. at ¶¶ 3, 8, 9.) The Education Department offered to inmates the *Los Angeles Times* and *La Opinion*, among other newspapers and magazines. (*Id*. at ¶ 10.) Defendants contend that they have found no written requests in their records from Dunne pertaining to this issue. (Dkt. 44-1, p. 10.)

Dunne counters that he had no notice that newspapers or magazines could be accessed in the SHU from the Education Department, and to his knowledge they were

**MEMORANDUM DECISION AND ORDER - 11**

never provided. (Dkt. 53, *February 23, 2011 Declaration of William Dunne*, ¶¶ 23-35.) Dunne originally claimed that he was allowed in the law library on only one occasion in the approximately four months he was in the SHU, but he now admits that he was provided access twice. (Dkt. 53, ¶ 39.) He asserts, however, that on those occasions, and at other times when he looked into the law library, he never saw newspapers or magazines. (*Id*. at ¶¶ 40-45.) Dunne has also submitted to the Court three written notations that he claims he submitted to officers requesting to use the law library, and he maintains that he verbally asked for permission on other occasions. (Dkt. 52, Attachment C.)

      After reviewing the parties' arguments and the material in the record, the Court agrees with Defendants that there is insufficient evidence from which a reasonable factfinder could conclude that Dunne was repeatedly denied access to the SHU law library such that his ability to exercise this constitutional right was impaired. Dunne admits that he was permitted to use the library twice, and he has offered notes showing only one other possible written request. His assertion that he verbally asked to use the library on other occasions is vague and insubstantial.

      Furthermore, there is insufficient evidence to support a finding that he was prevented from accessing alternative reading material from the Education Department for viewing in the law library, including newspapers and magazines, had he wanted to go that route. Dunne claims that he was unaware of this option, and he doubts that it existed as a practical matter, but the evidence before the Court shows persuasively that he was

**MEMORANDUM DECISION AND ORDER - 12**

concerned most acutely about the policy prohibiting newspapers and magazines in his own cell and, secondarily, about the absence of the *specific* type of material that he wanted to read in the law library. The Court has already determined that prison officials were not required to stock precisely what he wanted to read as long as they provided reasonable alternatives. (Dkt. 35, p. 16.)

More importantly, the Court is convinced that even if certain unnamed prison personnel failed to implement the policy correctly, there is no evidence from which a reasonable factfinder could conclude that these Defendants – Warden Smith, Associate Warden Avalos, and Captain Karge – were responsible for the violations. All three Defendants held supervisory positions at USP-Atwater, and there is no *respondeat superior* theory of liability in a *Bivens* action. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). Dunne has alleged no facts from which one could find that any of these Defendants personally participated in individual failures to implement the policy as it was written.

The Court previously declined to address the third and fourth *Turner* factors, and it now concludes that they provide support for policy. The third factor requires consideration of the impact on inmates and correctional officers if the right were accommodated, and the Court finds that allowing newspapers and magazines in SHU cells would have had a negative impact due to the history of safety and security problems. The fourth factor looks to whether "ready alternatives" existed short of a total in-cell ban, and the Court is persuaded by Defendants evidence that there were no reasonable

**MEMORANDUM DECISION AND ORDER - 13**

alternatives aside from allowing access to reading material in a place other than the inmates' cells.

For all of these reasons, the Court concludes that Defendants have shown that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

### 3. Defendants have Qualified Immunity

Defendants also claim that they are also entitled to qualified immunity. This defense protects government officials from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

After viewing the evidence in a light most favorable to Plaintiff, and for the reasons already expressed, the Court concludes that Defendants' conduct did not clearly violate Plaintiff's constitutional rights. Accordingly, Defendants are immune from liability for damages under the doctrine of qualified immunity.

## ORDER

IT IS ORDERED:

1. Plaintiff's Motion for Extension of Time (Dkt. 50) is GRANTED. Plaintiff's response to Defendants' Motion for Summary Judgment is deemed timely.

2. Defendants' Supplemental Motion for Summary Judgment (Dkts. 44, 45) is

GRANTED.



DATED:  **March 31, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 15**